No. 3319.

(Court of Appeal, Parish of Orleans.)

# MRS. WIDOW P. O. SULLIVAN AND HEIRS OF P. O SULLIVAN, Appellants, vs. J. F. HER- BERGER, Appellee.

1. A surviving widow, although she may dispose of her interest in the community property, is powerless to dispose of the interest therein of her minor children.
2. Where such alienation by her is superinduced by fraud, such sale will be annulled and rescinded; for the law will not hold a party bound when his consent is the result of error bearing on the substance of the contract. 46 A. 509.

Appeal from Civil District Court, Division B.

F. C. Zacharie and E. C. Kelly, for Plaintiffs and Heirs of P. O. Sullivan, appellants.

B. Ory and P. S. Benedict, Defendant and Appellee.

BEAUREGARD, J.   The above entitled and consolidated suits were brought for the annulment of the sale of the property described in the pleadings and its restoration to the plaintiffs, its former owners.

The annulment sought is predicated on the charges of fraud and misrepresentations on the part of the defendant purchaser; of the vileness of the price paid for it; and on the further fact that this property which had been acquired by Patrick O'Sullivan in 1869 (and who died in 1873) was community property.  That the widow, who sold the property to the defendant, could only alienate her original interest and the one that she had acquired from a predeceased child and not the interest of her other children who were then minors; and who now, as heirs of their deceased father, claim with her the nullity of said sale, the heirs, to the extent of their respective interests therein and the widow because of the fraud to which she was subjected.

The defendant denies the charge made; avers that he bought the property in good faith on October 16, 1886; has been in possession since then; and finally pleads the prescription of 1, 2, 3, 4, 5 and 10 years.

On the other hand plaintiffs allege that it was only in May 1895 that they realized the fraud practiced upon them and under

95

which they lost their property, and that shortly after its discovery the present suits were brought; so that from October 16, 1886, to May 3, 1895, the date of the filing of these suits, the prescription of 10 years, which applied to the action in nullity or recission of agreements was unavailing, as the 10 years had not expired. And reference is made to R. C. C. 2221 and case of School Directors vs. Trimble 32 A. 793, in which the Court held that "the prescription established by that article of the Code relates to cases of error, fraud or violence in agreements which are expressly included in it" and which provides that in all cases wherein either an action (in nullity or recission) is not limited to a shorter period by a particular law, it may be brought within 10 years. This plea is therefore of no force; and equally so is the one urging the prescription of 1 to 5 years. In the first place they were not in argument, insisted on, and in the second place the suits were brought within the year of the discovery of the alleged deception or fraud which is a ground of nullity between the parties, Garland's C. P. 613 and authorities there cited. As revealed by the record, it appears that Widow O'Sullivan was an illiterate woman, with a large family depending upon her for a support which she earned by her daily wages. Unconscious of the accumulation of the State and City taxes due on her property, from 1872 to 1878, her attention was called to its adjudication to the State under Act 98 of 1882, then of its second adjudication under Act 82 of 1884 to a third party for $5.00 from whom she re-acquired it on a payment to him of $50 borrowed money. This second adjudication wiping out $96 of all taxes due from 1872 to 1879 inclusively.

Later on, it appears, becoming aware of a second accumulation of taxes from 1880 to 1883 with those to become subsequently due, her investigation of her tax indebtedness at the tax collector's office or elsewhere proving unsatisfactory, nebulous and distressing, she had recourse to her next door neighbor (a man of business who owned there a tannery and whom she deemed a friend) to ascertain for her the amount of her taxes due.

Thereafter, informed by this neighbor and defendant herein, that the amount due was $300 and over; aware of her inability to pay this sum; pressed by outside indebtedness to her baker, grocer and milkman; and whether it was suggested to her by the defendant, or she herself conceived the idea, she determined on selling her property, preference being asked for by, and given to the defendant and neighbor.

Thus this property which, during the marriage, had been bought by her husband in 1869 for $1220, and which in subsequent years up to the time of its sale by the widow had been variously assessed at from $450 to $500, was sold to the defendant for the agreed sum of $500—the testimony shows that the real consideration was to be the payment to the vendor of the balance left after deduction of the taxes due, and that such balance was falsely stated by the vendee to amount to $180, and embodied in the act of sale of October 15, 1886, whereas the taxes really due amounted to such

96

a lesser amount as will be hereafter shown—as to leave a considerable balance which was never tendered to the vendor and points to the vendee's bad faith.

Spurred by her children and conscious of her having disposed of the property under the pressure of unfair means, the attorney she employed to investigate the matter, on May 3, 1895, brought the present suits (to which allusion is made above) grounded on his pleadings, he charges the defendant with direct positive and constructive fraud, and with his known inadequacy of the purchase price. And with accuracy, he gives a tabular statement of all the State and City taxes due and to become due from 1880 to 1886. Illustrative of the fraud charged it appears that instead of the consent price at which the property was sold, the vendor, by notarial act, received only $180, whilst the assumption of payment by the purchaser, of the deliquent taxes of 1880 to 1883 were never paid; but the property was, by the buyer, allowed to be put up for sale by the Tax Collector under Act 80 of 1888 and adjudicated in 1889 to a third party for the Buyer's (defendant here) account; not for $300, as the defendant had reported to his vendee, but for $69, to which must be added the approximate taxes due 1884, 5 and 6.

Plaintiff's tabular statement which has not been rebutted is as follows :

\* Paid by Herberger.

| | State* | City* |
|---|---|---|
| 1880...... | | .........$ 8 19 |
| 1881...... | $69 00 | .......... 8 03 |
| 1882...... | | .......... 14 39 |
| 1883...... | | .......... 9 00 |
| 1884........ | 4 99 | .......... 10 00 |
| 1885........ | 4 63 | .......... 12 90 |
| 1886........ | 3 35 | .......... 10 10 |
| Total....$81 97 | | .........$72 71 |
| City........ 72 71 | | |
| $164 68 | | |

Thus it will be seen, that adding to the $164.68 the price paid for the property, $180, together $344.68 there was a balance left of $155.32 which the defendant pocketed; thereby retaining the thing and a part of the price and which, it does not appear, he ever offered to return to his vendor. A condition of affairs which had it ever been brought to the knowledge of the illiterate and ignorant vendor would have been repudiated by her, in the same manner she had done when the terms of sale had been agreed to and the defendant yet attempted to deduct an additional part of the price. "Simplicity and honesty are not to be suffered to become a

97

prey to double dealing and knavery." Domat Civil Law, Section 1260.

Now, so far as defendant's tax title is concerned, he was at the time of sale in 1889 in possession of property he had bought in 1886 and allowed it to go to sale for taxes he should have paid in 1886. By his wrong doing he could add nothing to his title to the detriment of his vendor. He was placed in the same position she had been when she re-acquired the property which had been sold to Negrotto for $5 and which she recovered for $50. Neither could in that respect, benefit by his or her wrong-doing; that is, Mrs. O'Sullivan in urging a complete title in her to the detriment of her children under a new title from a sale for taxes she was bound to pay as owner of a part and as usufructuary of the balance of the property. And the defendant subsequently in claiming the same under a title, in him fortified by a tax sale it was incumbent upon him to have averted.

Counsel for defendant has called the Court's attention to the purchaser's right to remain in possession of the property until the seller had made a tender of the price paid to him with the expenses he had incurred. This right is granted only to the purchaser in good faith: 31 A. 372. In this case. the study of the record conveys no other conviction but that the defendant had acquired plaintiff's property through bad faith, emphasized by his solicitude to eliminate by holdiug a tax title from the State—any doubt which might linger in his mind as to the validity of the title he had secured from an ignorant and illiterate widow, who would not have sold had, as stated before, the true condition of affairs been clearly brought to her mind and understanding.

"The law will not hold a party bound when his consent is the result of error (superinduced, it may be added by fraud) bearing on the substance of the contract." 46 A. 509,

In addition to the facts warranting an avoidance of defendant's title to the property in question so far as Widow O'Sullivan is concerned, it must be borne in mind that the community interest with respect to this property had never been settled prior to her alienation of same, and that therefore her heirs (then minors, now of age,) interest therein could not have been disposed of by their mother, as to them the saie of their interest to the defendant was an absolute nullity.

It is now ordered and decreed that the judgment appeaied from is avoided and reversed. And it is further decreed that the sale of the property in question on October 16, 1886, be annulled and rescinded and the ownership thereof be and is herein recognized to be in plaintiffs in suit, viz : Widow P. O. Sullivan and the heirs of their deceased father to the extent of their respective interests in said property.

It is further decreed that this case be remanded to the Lower Court that defendant may render an accounting of all the revenues and rents of said property by him received since October 15, 1886, together with the amounts of the taxes, State and City, when they

fell due, the amounts and dates of expenditures by him made if any, for taxes, insurance repairs and other expenses for maintenance of said property since said date. And it is further decreed that the defendant and appellee is condemned to pay to Mrs. Widow P. O. Sullivan the amount of said rents and revenues with legal interest thereon pcr annum from the dates when these respective amounts fell due, less the sum of $180, and the sum of $155.32, $335.32 with legal interest thereon from October 15, 1886, and less the amount of taxes, insurance, repairs and other costs for maintenance of said property with legal interest thereon from the dates of payment of said respective sums and costs.

Costs in both Courts to be paid by appellee who shall remain in possession of the property until plaintiffs have paid such amount if any, as may be found due after the accounting.

Judgment reversed and case remanded.